UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KRUSE, INC., <br>     Plaintiff, <br><br> v. <br><br> RODNEY HOGAN and PLAYTIME <br> PLAYGROUND EQUIPMENT, <br>     Defendants. <br> ─────────────────────────── <br><br> RODNEY HOGAN, <br>     Counterclaimant, <br><br> v. <br><br> KRUSE, INC., <br>     Counter-Defendant. <br> ─────────────────────────── <br><br> RODNEY HOGAN, <br>     Third Party Plaintiff, <br><br> v. <br><br> BUNKER LAKES DEALERSHIP, INC., <br> and DEAN KRUSE <br>     Defendants. | Case No. 1:10-CV-014 JD |

## OPINION AND ORDER

This case arises from several disputes regarding vehicles previously auctioned or sold by entities related to Dean Kruse.[1] Kruse, Inc., sued Rodney Hogan and Playtime Playground Equipment, Inc., in Indiana state court, alleging that the defendants had failed to pay for certain automobiles purchased at auction. [DE 1.] After the case was removed to this Court, Mr. Hogan filed a counterclaim against Kruse, Inc., arguing that Kruse, Inc., had breached an agreement by

---

[1] To avoid confusion, the Court refers to the individual Dean Kruse as "Mr. Kruse" and the corporate entity Kruse, Inc., as "Kruse, Inc." It refers to the entities collectively as the "Kruse entities."

selling Mr. Hogan's vehicles below reserve prices. [DE 14.] Mr. Hogan also filed a third-party complaint against Mr. Kruse and Bunker Lakes Dealership, Inc., relating to the sale of a recreational vehicle which Mr. Hogan claims he paid for but never received. [*Id.*] The progress of this case was delayed by a purported settlement by the parties, which depended upon the sale of the RV at issue in the third-party complaint. The case was stayed to effectuate a sale of the RV, but that sale was never accomplished. The stay was lifted and, after the attorneys for the Kruse entities withdrew and no new attorney appeared in the time allotted by the Court, default was entered against Kruse, Inc. [DE 88.]

Now before the Court is a motion for summary judgment filed by Mr. Hogan. [DE 97, 98.] The motion addresses only one portion of the claim against Mr. Kruse and Bunker Lakes Dealership regarding the purported sale of the RV, namely that the retention of the RV by the Kruse entities constitutes criminal conversion. The Kruse entities have not responded to the motion and the time to do so has passed. As a result, the Court may consider the facts contained in the motion "undisputed for the purposes of the motion" and may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

For the reasons stated below, even in light of the failure to respond to the motion, the Court finds that Mr. Hogan has not shown he is entitled to summary judgment. Accordingly, the motion for summary judgment is **DENIED**.

**I. Background**

As an initial matter, the Court notes that Mr. Hogan appears to have a misunderstanding regarding the status of the claims stated in his third-party complaint. Specifically, in his memorandum in support of his motion for summary judgment, Mr. Hogan incorrectly states

2

"Hogan has obtained a default judgment against Kruse on this conversion claim." [DE 98 at 3.] No entry of default or default judgment has been entered against any defendant on the claims in the third-party complaint; no default judgment has been entered against any defendant, period. In light of this misunderstanding, and for the benefit of the parties, the Court outlines the current status of the claims pending in this litigation.

As noted above, the case contains three operative pleadings: an initial complaint (brought by Kruse, Inc., against Mr. Hogan and Playtime Playground Equipment) [DE 1], a counterclaim (brought by Mr. Hogan against Kruse, Inc.) [DE 14], and a third-party complaint (brought by Mr. Hogan against Mr. Kruse and Bunker Lakes Dealership) [DE 14]. An entry of default, not a default judgment, has been entered against only one party in this case—Kruse, Inc.—based on that corporate entity's failure to appear through counsel. [DE 86, 87.] The Court would also have been justified in entering default against Bunker Lakes Dealership, based on that corporate entity's failure to appear by counsel, but did not do so at that time. Mr. Kruse, in his personal capacity, was warned that further failure to participate in the litigation could warrant the entry of default [*see* DE 86 at 1–2], but new counsel has since appeared and does appear to be engaging in the litigation as required. So, no default has been entered against Mr. Kruse on any claim.

Additionally, so that the parties are clear, the entry of default against Kruse, Inc., operates only as a default on the claims contained in Mr. Hogan's counterclaim. Rule 55 allows entry of default against "a party *against whom* a judgment for affirmative relief is sought." Fed. R. Civ. P. 55(a) (emphasis added). Kruse, Inc., meets that definition with respect to Mr. Hogan's counterclaim, but not with respect to its own claim contained in the initial complaint. Accordingly, the Court considers Kruse, Inc.'s, claim against Mr. Hogan and Playtime Playground Equipment to remain pending.

With that background, the Court turns to the pending motion, which addresses only the non-defaulted claim of criminal conversion against Mr. Kruse and Bunker Lakes Dealership, relating to the RV at issue in the third-party complaint.

## II. Facts

In light of the failure of the Kruse entities to respond to the motion for summary judgment, the Court treats the following facts as undisputed for the purposes of this motion. In 2009, Mr. Hogan purchased a 1998 40-foot Prevost Liberty Mirage recreational vehicle from either Mr. Kruse or Bunker Lakes (the motion is unclear). Mr. Hogan paid $250,000, which was remitted by cashier's check payable to Mr. Kruse. [DE 98-3.]

Mr. Kruse has refused to provide the RV to Mr. Hogan. Mr. Kruse testified at deposition that the RV is currently being stored in a facility under Mr. Kruse's control in DeKalb County, Indiana. [DE 98-1 at 1.] At one point, a sheriff came to pick up the RV, but declined to do so once Mr. Kruse showed that he had "a lien and a UCC filed with the Secretary of State on it for the amount of money he owed." [*Id.* at 2.] Mr. Kruse testified that he instructed his "people to keep the bus" in light of other money allegedly owed by Mr. Hogan to Mr. Kruse. [*Id.*]

## III. Standard of Review

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Kerri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Summary judgment is not a tool to decide

legitimately contested issues, and it may not be granted unless no reasonable jury could decide in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of [a] genuine issue of material fact." *Id.* at 323. Once the moving party meets this burden, the nonmoving party may not rest on allegations or denials in its own pleading, but must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1); *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). The disputed facts must be material, which means that they "might affect the outcome of the suit under the governing law." *Brown v. City of Lafayette*, No. 4:08-CV-69, 2010 WL 1570805, at *2 (N.D. Ind. Apr. 16, 2010).

As a federal court sitting in diversity, the Court will rely on state substantive law and attempt to predict how the Indiana Supreme Court would decide the issue presented here. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999) ("Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently.").

### IV. Discussion

The sole claim at issue in the pending motion is Mr. Hogan's claim of criminal conversion. The pending motion does not address the legal standards applicable to a finding of criminal conversion, perhaps because of the mistaken belief that default has already been entered. So, the Court begins by stating the applicable standards here.

Under Indiana law, a person commits criminal conversion when he or she "knowingly or intentionally exerts unauthorized control over property of another person." Ind. Code § 35-43-4-3. Under the Indiana Crime Victims Act, a person who has suffered a pecuniary loss as a result

5

of a criminal conversion may bring a civil action to recover the loss. *JET Credit Union v. Loudermilk*, 879 N.E.2d 594, 597 (Ind. Ct. App. 2008). Unlike a criminal prosecution, a plaintiff bringing a civil claim need only prove by a preponderance of the evidence that the defendant committed the criminal act. *Id.* The plaintiff must, however, prove all of the elements of the criminal act. *Larson v. Karagan*, 979 N.E.2d 655, 661 (Ind. Ct. App. 2012).

Under Indiana law, "[a] person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." *Id.* at (b). The statute further states that to "'[e]xert control over property' means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." Ind. Code § 35-43-4-1(a). "A person's control over property of another person is "unauthorized" if, among other things, it is exerted "without the other person's consent." Ind. Code § 35-43-4-1(b)(1).

It was not the intent of the Indiana legislature to criminalize bona fide contract disputes as criminal conversion. *NationsCredit Commercial Corp. v. Grauel Enters.*, 703 N.E.2d 1072, 1079 (Ind. Ct. App. 1998). Therefore, in order to succeed on a claim of conversion, the plaintiff must show criminal intent. *JET Credit Union*, 879 N.E.2d at 597 ("It is this *mens rea* requirement that differentiates criminal conversion from a more innocent breach of contract or failure to pay a debt, which situations the criminal conversion statute was not intended to cover."). To establish that intent, the plaintiff "must show the defendant was aware of a high probability his control over the plaintiff's property was unauthorized." *Id.* The Indiana Supreme Court has stated that it is a "rare situation in which criminal intent may be found in a civil action through summary judgment." *White v. Ind. Realty Assocs. II*, 555 N.E.2d 454, 458 (Ind. 1990).

However, the failure to respond to the summary judgment motion can provide such a situation. *Id.*

Based on those legal standards, the Court must then determine whether or not the uncontested allegations entitle Mr. Hogan to summary judgment on the criminal conversion claim. Mr. Hogan's motion is unclear as to whether he is seeking summary judgment against Mr. Kruse individually, Bunker Lakes Dealership, or both. Rather, the motion refers to each of the defendants as "Kruse," without distinction between the individual defendants. [DE 98 at 2.] However, because the motion contains no factual allegations regarding any actions taken by Bunker Lakes Dealership, summary judgment as to that defendant, to the extent it is requested, is **DENIED**.

With respect to Mr. Kruse, there is no question that he exercised control over the RV. Additionally, the uncontested facts are that Mr. Hogan had paid for the RV and sent one of his employees to obtain the RV from Mr. Hogan. This is sufficient factual basis to determine that Mr. Kruse exercised the control without Mr. Hogan's consent and, thus, his exercise of control was unauthorized. Mr. Kruse further admitted at deposition that he took these actions intentionally.

That leaves the question of criminal intent. As noted above, a defendant must have been "aware of a high probability his control over the plaintiff's property was unauthorized" in order to justify a finding of criminal conversion. That "high probability" has been found lacking in cases where the defendant has a good faith belief in his entitlement to the property at issue. *See JET Credit Union*, 879 N.E.2d at 598 (finding reliance on DFI interpretation of statute sufficient to negate any criminal intent). On the other hand, exercising control over property without any legal basis can subject a party to a finding of criminal conversion. *Romanowski v. Giordano*

*Mgmt. Group, LLC*, 896 N.E.2d 558, 563 (Ind. Ct. App. 2008) (finding actions in removing tenants' personal property without legal basis justified finding of criminal conversion); *Palmer Dodge, Inc. v. Long*, 791 N.E.2d 788, 791–92 (Ind. Ct. App. 2003) (finding failure to adhere to contractual term requiring return of trade-in vehicle justified finding of criminal conversion). In other words, where a defendant has a "belief that he had a contractual right" to the property, it can serve as evidence to negate any criminal intent. *Manzon v. Stant Corp.*, 138 F. Supp. 2d 1110, 1116–17 (S.D. Ind. 2001) (holding retention of company car, in compliance with employment contract, did not constitute criminal conversion); *Palmer Dodge*, 791 N.E.2d at 791 (reasonableness of belief of entitlement to property is a question of fact).

Here, the evidence offered by Mr. Hogan in support of the summary judgment motion demonstrates that Mr. Kruse believed he was entitled to retain the RV due to money owed to him by Mr. Hogan due to other commercial transactions. [DE 98-1 at 2 ("Q: And as I understand your testimony, you did not release possession of the bus because of the amount of $670,000 that was owed to you? A: Yes, I told our people to keep the bus and the cars, but somehow the cars got out of there over a period of several weeks, and I didn't realize it, but the bus was immobile, so it wasn't running. It was there, so I told them to lock it up.").] No facts are currently before the Court regarding whether Mr. Kruse's belief regarding his entitlement to retain the RV was either reasonable or justified—legally or factually—under the circumstances. For instance, the Court has no information about whether or not Mr. Hogan legitimately owed money to Mr. Kruse, either from related or unrelated business transactions. Additionally, Mr. Hogan has offered no legal argument against the notion that Mr. Kruse is entitled to the lien he sought and obtained on the RV.

In light of the paucity of the record, and making every legitimate inference in favor of Mr. Kruse—as the Court must, even in light of his failure to respond to the summary judgment motion—the Court finds that it may be possible for a reasonable jury to decide that Mr. Kruse lacked the requisite criminal intent. If so, such a jury could decide the criminal conversion claim in favor of Mr. Kruse. Accordingly, summary judgment against Mr. Kruse is **DENIED**.

## V. Conclusion

For the reasons stated above, Mr. Hogan's motion for summary judgment is **DENIED**. [DE 97.]

SO ORDERED.

ENTERED: January 22, 2015

                                        /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court